Nelson, J.,
delivered tlie opinion of the Court.
On the trial of this action for trespass, assault and battery-and false imprisonment, it was in proof that the defendant in error was a soldier in the United States army, absent on leave; that George Threat and others, who were soldiers in the rebel army, and under the command of Colonel F. H. Dougherty, a regular officer in the rebel service, were permitted by him to go into the neighborhood where defendant in error was; that. Threat and his associates were expressly ordered by *255 their commanding officer to arrest and bring into camp any Federal soldier whom they could find; that, in obedience to this order, they started “on a scout;” and learning that defendant in error was at home, surrounded bis house about daylight, and captured him; and that he was guarded and taken, by way of Livingston, to Chattanooga, where, it may be inferred, he was detained as a prisoner, some time in the year 1862, but the precise date of the arrest, and nature and duration of the imprisonment, are not stated in the record. It appears that the plaintiff in error was not present at the arrest; but several witnesses, as to whose credibility the evidence is conflicting, testified that the plaintiff in error, who was a rebel, admitted that he had “let the soldiers have a horse and saddle and a gun, to go and capture” the defendant in error; expressed himself in strong terms in favor of the arrest, and approved the same after it was made. One of the captors testified that the plaintiff in error was ignorant of their intention to make the arrest; and that they took his horse and gun without his knowledge or consent. But, without critically weighing the credit of the witnesses or the force of their testimony, it may be assumed, after the verdict of the jury in this case, that there was evidence to satisfy the jury that plaintiff in error aided and abetted in making the arrest, and afterwards fully sanctioned and approved it. Among other things, the ■ Circuit Judge instructed the jury, in substance, that if the plaintiff below was a Federal soldier, and was arrested by Confederate soldiers, under orders of their commander, through the advice, information or encouragement *256 of tbe plaintiff in error, who was a citizen, the fact tbat the parties who made the arrest were rebel soldiers, acting under the command of a superior officer would be no protection or justification to the defendant in error.
Without particularizing the objections to this charge, we hold that it was contrary to the principles declared in the case of Smith v. Brazelton, recently determined at Knoxville, 1 Heis., 44, and that the arrest and imprisonment of defendant in error, made,, as they were, in obedience to the command of a superior officer, were lawful acts of war; and that, in the absence of proof of express malice, the plaintiff in error was not a trespasser in either procuring or encouraging such arrest. The principles declared in that opinion were very carefully considered before they were promulgated, by the whole Court; and satisfied, as we are, that they are well sustained by reason and authority, we do not regard it as our duty either to modify or retract them.
It appears from the record that two witnesses, who had been confined in rebel prisons — one of them at Belle Isle prison, at Richmond — were permitted to detail their sufferings and bad treatment in those prisons; and this in opposition to the direct objection of plaintiff in error to the admissibility of the evidence, and, also, when there was no proof that the defendant in error was confined in any, or, if in any, in what prison.
It would be superfluous to cite authorities to show that the sufferings and bad treatment of persons who were not parties to the suit, and in no way connected with the cause, could not, upon any conceivable legal principle, be rightfully admitted as evidence in a suit *257 with which such bad treatment and sufferings had no earthly connection. The admission of such testimony was a grave error. It was foreign to "the cause, but well calculated to create prejudice in the minds of the jurors.
Without commenting on the verdict itself, or the strong affidavits presented on the application for a new trial, which tend to show that it was, in legal parlance, a “gambling verdict,” we hold that his Honor, the Circuit Judge, erred in refusing to grant a new trial; and accordingly reverse his judgment and remand the cause.